Linda J. Cox-Cooper,  Esq., SB#191438
2535 Oliver Avenue
Oakland, California  94605
(510) 451-0539
Fax: (510) 451-1693

Attorney for Plaintiff
MELODY Mc DANIEL

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO

| | |
|---|---|
| MELODY McDANIEL, | Case No. C 06-5321 SI |
| Plaintiff, | **DECLARATION OF MELODY Mc DANIEL IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| JOHN E. POTTER, Postmaster General, | |
| Defendant. | |

I, Melody Mc Daniel, declare as follows:

1.     I am over the age of 18, am a resident of the State of California, and make this declaration in opposition of defendant's motion for summary judgment.   The statements contained in this declaration are within my personal knowledge.

2.     I started working at the United States Postal Service on December 19, 1987. After 17 years of employment as a career employee, I was promoted from Supervisor Maintenance Operations Support to Acting Manager of Maintenance, at the Airport Mail Center, San Francisco, California on May 20, 2004, filling the position left by Walter Butler.

3.     At the time of my promotion, I was the only African American female acting as Manger of Maintenance at the Air Mail Center.

4.      On January 28, 2005, I was demoted from Acting Manager of Maintenance, EAS -19, at the Air Mail Center back to the Supervisor, Maintenance Operations Support, EAS – 17.

5.      On January 31, 2005, I filed an EEO Counseling Request as I became aware of several non African Americans who work for the United States Postal Service had been charged with Unacceptable Conduct for various actions; however none of them were demoted.

6.      On February 28, 2005, Ana Hilario, acting Plant Manager at Air Mail Center, attempted to give me the letter of removal while I was working at the Processing and Distribution Center ("P&DC").

7.      On April 11, 2005, I was then demoted from Supervisor Maintenance, Operations Support, EAS-17, to Maintenance Operation Support Clerk, Level 5.  I was charged with Unacceptable Conduct for not being physically in the facility on December 5, 11, 12, 18, and 19, 2004 and receiving 40 hours overtime pay.  I was also charged with directing, David Woo, a supervisor to input my overtime hours into the pay system.  I also worked overtime under Walter Butler ("Mr. Butler") when he was my manager and did not get paid.  The letter did not clarify the charges against me but referred to an earlier letter that cited several charges.  To date, I am unclear as to which sections of the Employee and Labor Relations Manual I violated.

8.      I was discriminated against as I spoke with my manager at the time, Jerry Alabastro and asked him if I had to be in building for the overtime?  His response was, "No, just make yourself available."   Jerry Alabastro does not deny we had a discussion in his office regarding my availability for the five days in question in December 2004.  I wrote a note confirming our discussion during our conversation.  Following the directions of my supervisors at the time, Jerry Alabastro, I even sent an email confirming my conversation with Jerry to my staff to authorize my staff's and for them to offer their employees overtime. We now disagree as to whether my working in the field was unauthorized and not common practice for supervisors and managers to be on telephone standby and working in the field.

1   As an African American female, I was set up by management.

2       9.      However, the discipline I received was far in excess of what it should have been.

3   As an African American female, I was not afforded the progressive discipline process used

4   by the United States Postal Service, such as a verbal warning, letter of warning, 5-day

5   suspension, 7 calendar day suspension, 14 calendar day suspension, emergency

6   suspension and then proposal to terminate.  The Postal Service has yet to demand or asked

7   me to refund any money, if the agency believed being available via telephone (working in the

8   field) or personal contact, talking to employees, vendors and contractors was considered not

9   working on December 5, 11, 12, 18 and 19, 2004.

10      10.     The only reason I was disciplined so harshly was because I am African

11  American.  For example, Dan C. Higginbotham, a non African American male, while working

12  at the International Service Center ("ISC") Facility as the Acting Manager of Maintenance at

13  the San Francisco Processing and Distribution Center ("P&DC") was accused of

14  Unacceptable Conduct for working 696 hours of unauthorized straight time pay from August

15  17, 2002 to January 10, 2003, a violation of Section 666.2 of the Employee and Labor

16  Relations Manual (ELM).  Mr. Higginbotham earned at least $24,360 in addition to his

17  regular salary.  Mr. Higginbotham also put in time for Clifford Willingham, another non

18  African American male, (see below) and did not get demoted.  Mr. Higginbotham only

19  received a written letter of warning in lieu of a fourteen (14) day time-off suspension.

20      11.     I personally spoke with Mr. Higginbotham and was told that he did eventually

21  receive a 14 day suspension at a later time for the same incident.  However that information

22  was not given to me by the Postal Service.  Since Mr. Higginbotham worked the

23  unauthorized 696 hours he has been detailed into another Acting Manager position in

24  Stockton, California and many other postal facilities.

25      12.     Clifford Willingham, a non African American male working at the International

26  Service Center ("ISC") Facility, as the Supervisor, Maintenance Operation at the San

27  Francisco P&DC, who was accused of Unacceptable Conduct for putting in work time for

28  Dan Higginbotham covering the period of August 17, 2002 to January 10, 2003.   Mr.

1   Willingham was not disciplined because he was following the direction of Acting Manager of
2   Maintenance, Dan Higginbotham, nor was he demoted.

3        13.    Ted Campbell, a non African American male who worked as the Manager of
4   Maintenance at the North Bay Processing and Distribution Center ("P&DC"), was charged
5   with Unacceptable Conduct for obtaining unauthorized time in 2003.   This non African
6   American did not receive *any discipline, nor* was he demoted.

7        14.    I also discovered Ted Volken, another non African American male, while working
8   as a Supervisor of Maintenance Operation at the North Bay Processing and Distribution
9   Center ("P&DC") was charged with Unauthorized Time in 2003 – 2004.   Mr. Volken, did not
10  receive *any discipline, nor was he* demoted.

11       15.    Dale Dunn, a non African American, accused of Unacceptable Conduct for
12  misusing the United States Postal Service Credit Card by charging personal items, in March
13  2005 while working as the Acting Manager was classified as a Supervisor Maintenance
14  Operation at the International Service Center, ("ISC") which is a violation of Section 666.2 of
15  the Employee and Labor Relations Manual (ELM).   Mr. Dunn *only received a proposed*
16  *letter of warning* in lieu of time-off suspension on March 15, 2005 *and* was requested to
17  pay back the money.   It is my understanding; Mr. Dunn has yet to repay the money to the
18  United States Postal Service.   Mr. Dunn was not demoted, even though *he admitted to using*
19  *the card for personal reasons and was aware that the card was for official business only.*

20       16.    Tim McDaniel, another non African American male while working as the
21  Supervisor Maintenance Operation at the San Francisco Processing and Distribution Center
22  ("P&DC") also misused the United States Postal Service Credit Card.   Again, he was not
23  demoted, nor was he disciplined. All he had to do was pay back the money and to this day, I
24  do not believe he, too has paid the Postal Service back the money.

25       17.    Todd Holland, another non African American male, was accused of
26  Unacceptable Conduct while working as a Supervisor, Maintenance Operation at the San
27  Francisco Processing and Distribution Center ("P&DC") in 2005-2006 because he was
28  accused of not physically being in the facility when he was called over the radio for

1    assistance.  At the time his manager, Robert Wills could not use the badge reading system
2    to ascertain whether he was or was not in the facility without a court order, yet they ran my
3    badge reading system without a court order.  Mr. Holland was not disciplined for his conduct
4    at all.  Nor was he demoted.

5        18.    All the above were non African American men who worked as a manager or
6    supervisor *various Maintenance Departments in Northern California of the United*
7    *States Postal Service* who *received little or no discipline*.   None were demoted as a
8    result of their actions, even though *they work for the United States Postal Service* and
9    should be subjected to the same or similar level of discipline per the Employee and Labor
10   Relations Manual as me.  In fact, some of the above men return to acting manager positions
11   after their alleged incidents.

12       19.    It is not a surprise the United States Attorney's Office only provided disciplinary
13   actions taken against Dale Dunn and Dan Higginbotham, even though I requested discipline
14   records on Clifford Willingham, Ted Campbell, Ted Volken, Tim McDaniel and Todd Holland,
15   and requested the United States Postal Service identify by race and gender all supervisors
16   and managers working at the Operations Division of the United States Postal Service, Pacific
17   Area, disciplined from January 2000 to the present.

18       20.    It was by happenstance that I discussed my situation with Mr. Higginbotham and
19   found out directly from him how the Postal Service handled his case.  The United States
20   Postal Service conveniently disposed of the information to bolster their case against me.   It
21   was obvious they were out to get me in a negative way to discredit me from being the first
22   choice for any future promotion.   At the time I was in the top five candidates on the list to be
23   promoted to a full time Manager's position.  Now, based on being discriminated against, I am
24   handled like the plague.

25       21.    As the only African American female in a managerial position at the Maintenance
26   Department of the Air Mail Center, I was demoted from Acting Manager EAS 19 Level to
27   Supervisor, EAS – 17, to Maintenance Operation Support Clerk, Level PS-05 for my
28   conduct.  I was not afforded another supervisory position since the December 2004 incident.

1  Not even a PS-Level 6 position as to the work I was asked to do and have done in the past.

2  Despite the fact that I had passed the requirement to be a PS-Level 6 employee  Moreover,

3  I have been bounced around to various clerk positions for the last two years, when I should

4  have been put back to my former clerk position, which was PS-Level 5 in the position of the

5  administrative assistance to the Manager of Maintenance at the San Francisco P&DC

6  facility.  Despite my meeting with James Larkin, he said, "this would not touch my pay and

7  this would not hinder nor stop my future position within the Postal Service.

8        I declare under penalty of perjury under the laws of the United States of America that

9  the foregoing is true and correct.  Executed on October 26, 2007 at Oakland, California.

MELODY Mc DANIEL, Plaintiff

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 1

Airport Mail Center


UNITED STATES
POSTAL SERVICE

February 28, 2005

Melody McDaniel
Supervisor Maintenance Operations Support
Airport Mail Center

Subject: Notice of Proposed Adverse Action—Removal

This is advance written notice that it is proposed to remove you from the Postal Service no sooner than 30 calendar days from the date of your receipt of this letter.

This action is based on the following reason (s):

<u>Charge :</u>  Unacceptable Conduct

**Specification 1: Obtaining pay for time not worked.**
**Specification 2: Asking subordinate to enter work hours for you on dates you did not work.**

On December 11 and 18, 2004, Ms. Anna Hilario, the mail flow coordinator, had been looking for you asking if you had reported to work. Both tour managers Elsa Chavez and Eric Lopez indicated they had not seen you report to work. This also occurred on a couple of Sundays in December, 2004. A review of the TACS revealed that your time had been input for 8 hours each on Sunday, December 5, 2004, December 11 and 12, 2004 (Saturday and Sunday), and December 18 and 19, 2004 (Saturday and Sunday), totaling 40 hours of work for which you were paid. The TACS revealed that the aforementioned time was input by David Woo, Maintenance Supervisor. When questioned Supervisor Woo indicated that on the Tuesday following the weekends cited above you instructed him to input your time for the above mentioned dates. Mr. Woo also indicated that on the above cited Saturdays when he was at work (his off days are Sunday/Monday), he did not see you at work. A review of the Building ACCESS reader disclosed that there was no activity of entries or exits of your badge into/out of the building or the EAS parking lot on the dates in question.

During the Investigative interview by Ms. Hilario on January 5, 2005, you were asked if you reported to work on the above weekends. Instead of responding you requested to be excused for a few minutes to check your calendar. When you returned you indicated that you had been answering phone calls for maintenance and wanted to be sure everything was going well. When informed by Ms. Hilario that the Building ACCESS system revealed the

BLDG. 660 WEST FIELD ROAD
SAN FRANCISCO CA 94128-9741
TEL# 650-808-1300
FAX# 650-808-1457

- 2 -

absence of activities of your badge card on the dates in question, you said that "you were out in the field working such as buying things for AMC". You also indicated that in the month of May you had been working extra hours without getting any pay. This response is not acceptable as it has no relation to why you had supervisor Woo enter time for you on dates you did not work.

On January 13, 2004, I asked if you recalled that I gave an order that all days off in December were canceled; you indicated that "you were working at home responding to calls". Your response contradicted your previous response to questions from Ms. Hilario, therefore, you were afforded a second day in court on January 14, 2005. Instead of responding to the questions posed by Ms. Hilario you simply indicated to her that: "You were contacting the NAPS representative and asked permission to be excused".

Your responses are not acceptable, as you were fully aware of my directive to cancel all off days for all supervisors including yourself. You did not abide by my directive and in addition, you asked another supervisor to input 40 hours of work for you knowing full well that you were not at work on the dates in question. Your conduct of obtaining gain for time not worked is deceiving in nature and demonstrates that you are not a trustworthy individual. As a manager/supervisor you are held to higher standards of conduct as you are expected to be a role model for other employees. By knowingly having another co-worker enter work hours for you for dates when you did not work you are in effect falsifying time records. This charge standing alone warrants your removal to promote postal service efficiency.

Your conduct violates the Employee and Labor Relations Manual (ELM), Section 666.2, which requires that employees be honest and trustworthy. Your conduct also violated the ELM section 661.21.3 which reads in part: "Give a full day's labor for a full days pay."

You and/or your representative may review the material, if any, relied on to support the reasons for this notice at the San Francisco P&DC, 1300 Evans Ave. Room 378, San Francisco CA 94188. If you do not understand the reasons for this notice, please contact the undersigned for further information.

You and/or your representative may answer the charge within ten (10) days from your receipt of this letter, either in person or in writing or both to James Larkin, Senior Plant Manager San Francisco District, 1300 Evans Ave, Room 300, San Francisco CA 94188, between the hours of 9:00 AM and 3:30 PM. Please call (415) 550-5648 to make an appointment.

You may also furnish affidavits or other written materials to Mr. Larkin, within ten (10) days from your receipt of this letter. You will be afforded a reasonable amount of official time for the above purpose if you are otherwise in a duty status. After the expiration of the ten-day limit for reply, all facts in the case, including any reply you submit will be given full consideration before a decision is rendered. You will then receive a written decision from James Larkin, Senior Plant Manager San Francisco District.

USPS0051

- 3 -

If you appeal this decision, you will remain on the rolls, but in a non-pay, non-duty status after the effective date of this action, until disposition of this case has been had either through settlement or through exhaustion of your administrative remedies.

"If this action is overturned on appeal, back pay will be allowed unless otherwise specified in the appropriate award or decision, ONLY IF YOU HAVE MADE REASONABLE EFFORTS TO OBTAIN OTHER EMPLOYMENT DURING THE RELEVANT NON-WORK PERIOD.  The extent of documentation necessary to support your back pay claim is explained in the ELM, section 436". (Copy Attached).

Appeal rights for non-bargaining employees are contained in Section 650 of the Employee and Labor Relations Manual. (Attached).


Jerry Alabastro
Plant Manager
Airport Mail Center

USPS0052