IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

MELODY McDANIEL,

      Plaintiff,

  v.

JOHN E. POTTER, Postmaster General

      Defendant.
                                     /

No. C 06-5321 SI

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

On November 16, 2007, the Court held a hearing on defendant's motion for summary judgment. Having considered the arguments of counsel and the papers submitted, the Court GRANTS defendant's motion.

**BACKGROUND**

Plaintiff Melody McDaniel, an African-American female, began working for the United States Postal Service ("USPS") in December 1987. On May 20, 2004, the USPS promoted her from Supervisor Maintenance Operations to Acting Manager of Maintenance at the Airport Mail Center, Maintenance Division in South San Francisco, California. As Acting Manager, she worked Monday through Friday with weekends off; however, defendant required that she be "on-call" at all times in case her assistance was ever needed. *See* Walter Butler Decl. ¶ 4.

On December 4, 2004, in order to prepare for the hectic holiday season, plaintiff's supervisor, Jerry Alabastro ("Alabastro"), informed all management employees that their days off were canceled. Later that day, plaintiff spoke with Alabastro and expressed reservations about being able to come into work all seven days each week. She asked Alabastro, "If [she] had to be in the building [seven days

each week]?" *See* McDaniel Dep., Ex. 5, 58:1-3. Per plaintiff's recollection and a handwritten note she claims to have written during the meeting, Alabastro responded that she did not have to physically report to work on her normal days off, but only had to "make [herself] available." *Id.* Plaintiff sent an email to her staff on December 10, 2004 informing them of Alabastro's instructions, and that he "just asked [her] to be available at all times." *See* McDaniel Dep., Ex. 7, 12/10/04 email.

Building access records show that plaintiff did not enter her work facility on December 5, 11, 12, 18, or 19, 2004. Alabastro Decl. ¶ 4. Plaintiff claims she worked off-site on those days, a practice she had undertaken previously. McDaniel Dep., Ex. 2, 49:1-23, 65:25; Butler Decl. ¶ 4. She instructed David Woo, Maintenance Supervisor, to enter eight hours of overtime for each of those five days and defendant later paid her for those forty hours. *Id.*

However, after discovering that plaintiff received overtime pay for days that she was not present at work, defendant investigated the matter and interviewed plaintiff. A letter to plaintiff on February 28, 2005 updating her on the investigation described the interviews:

> During the Investigative interview by Ms. Hilario on January 5, 2005, you were asked if you reported to work on the above weekends. Instead of responding you requested to be excused for a few minutes to check your calendar. When you returned you indicated that you had been answering phone calls for maintenance and wanted to be sure everything was going well. When informed by Ms. Hilario that the Building ACCESS system revealed the absence of activities of your badge card on the dates in question, you said that "you were out in the field working such as buying things for AMC". [sic] You also indicated that in the month of May you had been working extra hours without getting any pay. This response is not acceptable as it has no relation to why you had supervisor Woo enter time for you on dates you did not work.
>
> On January 13, 2004 [sic], [Jerry Alabastro] asked if you recalled that [he] gave an order that all days off in December were canceled; you indicated that "you were working at home responding to calls". [sic] Your response contradicted your previous response to questions from Ms. Hilario, therefore, you were afforded a second day in court on January 14, 2005. Instead of responding to the questions posed by Ms. Hilario you simply indicated to her that: "You were contacting the [National Association of Postal Supervisors] representative and asked permission to be excused". [sic]

McDaniel Decl., Ex. 1. Plaintiff's USPS cell phone records show at most approximately 159 minutes of work-related calls[1] on the dates in issue and no charges appear on her USPS credit card during those dates. Defendant's Memorandum ("Mem.") 4:25-28, n. 1; Alabastro Decl. ¶ 5.

---

[1] Plaintiff's cell phone records do not reveal the telephone numbers of incoming calls, and thus this estimate assumes that all incoming calls were work-related. *See* Kim Decl., Ex. B.

2

On or about January 28, 2005, plaintiff received a letter from defendant removing her from her position as Acting Manager of Maintenance. McDaniel Dep., Ex. 8, 134:23-25, 135:1-4. The letter did not explain the reason for demoting her, but only stated that her services as Acting Manager were no longer needed and it asked her to train her replacement. On January 31, 2005, plaintiff filed an Equal Employment Opportunity ("EEO") Counseling Request alleging racial and sexual discrimination in her demotion from Acting Manager. *See* Letitia R. Kim Decl., Ex. G at 13. On February 5, 2005, plaintiff filed an EEO Complaint. *See* Kim Decl., Ex. B.

Based on defendant's internal investigation, defendant issued plaintiff a Notice of Proposed Removal on February 28, 2005. The letter charged her with "Unacceptable Conduct" in violation of the Employee and Labor Relations Manual ("ELM"). Specifically, defendant accused her of falsifying her time records, receiving pay for days she did not work, and asking a subordinate to enter her hours. *See* ELM § 661.21-22 (employees are to "[g]ive a full day's labor for a full day's pay"); § 666.84 (prohibiting falsification of time records and "recording time for another employee").

On April 11, 2005, defendant issued its official disciplinary decision against plaintiff in a letter that reduced the previously proposed discharge of plaintiff to a demotion from Supervisor of Maintenance Support Operations to Maintenance Support Clerk. Kim Decl., Ex. 1, internal Ex. C. On April 16, 2005, plaintiff appealed this decision to the Merit Systems Protection Board ("MSPB"), which affirmed the decision after a hearing. *Id.* at Ex. 1, internal Ex. E, G. In May 2006, plaintiff appealed the decision of the MSPB to the EEO Commission and attempted to file a formal complaint with the EEO as well. Her appeal was denied. On August 29, 2006, plaintiff filed this action alleging claims under Title VII based on race and sex discrimination and retaliation for her EEO activity.

**LEGAL STANDARD**

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party, however, has

no burden to negate or disprove matters on which the non-moving party will have the burden of proof at trial. The moving party need only point out to the Court that there is an absence of evidence to support the non-moving party's case. *See id.* at 325.

The burden then shifts to the non-moving party to "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). To carry this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

In deciding a summary judgment motion, the evidence is viewed in the light most favorable to the non-moving party, and all justifiable inferences are to be drawn in its favor. *Id.* at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge [when she] is ruling on a motion for summary judgment." *Id.* The evidence presented by the parties must be admissible. Fed. R. Civ. P. 56(e). Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

## DISCUSSION

### I.  Unlawful Discrimination

Plaintiff sues under Title VII, which provides, in relevant part, that "[i]t shall be an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." *See* 42 U.S.C. § 2000e-2(a)(1). Discrimination claims under Title VII are analyzed using the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). Under the *McDonnell Douglas* framework, the plaintiff must first establish a *prima facie* case of discrimination. *Id.* Then the burden shifts to the employer to respond with a legitimate, nondiscriminatory reason for

4

its actions. *Id.* The burden then shifts back to the plaintiff to establish that the employer's articulated reason was a "pretext" or cover-up for unlawful discrimination. *Id.*

### A.     Plaintiff's *prima facie* case

Plaintiff may establish a *prima facie* case of discrimination under the *McDonnell Douglas* framework by showing that: (1) plaintiff is a member of a protected class; (2) plaintiff was qualified for her position; (3) plaintiff experienced an adverse employment action; and (4) similarly situated individuals outside plaintiff's protected class were treated more favorably. *See Peterson v. Hewlett-Packard Co.*, 358 F.3d 599, 604 (9th Cir. 2004). The Ninth Circuit has repeatedly emphasized that a plaintiff's burden in establishing a *prima facie* case of discrimination is "minimal." *Coghlan v. Am. Seafoods Co.*, 413 F.3d 1090, 1094 (9th Cir. 2005). Here, as an African-American woman and an employee who was twice demoted, plaintiff has met the first and third elements of her *prima facie* case, and defendant does not argue otherwise. However, defendant contends that plaintiff has failed to satisfy the second and fourth elements of her *prima facie* burden – showing that plaintiff performed her job satisfactorily and that similarly situated employees were treated more favorably.

Plaintiff has demonstrated she was qualified for her job position. At the time of the incident, plaintiff had worked for the USPS for seventeen years, been promoted on several occasions, and had an unblemished disciplinary record. The former Manager of Maintenance at the Air Mail Center recommended plaintiff as his replacement "due to her superior performance and her high level of commitment and integrity." Butler Decl. ¶ 2. The Air Mail Center Maintenance Manager Secretary, who received training from plaintiff, stated that plaintiff "is a very hardworking, and trustworthy person." Kim Decl., Ex. 1, internal Ex. H. To dispute plaintiff's qualifications, defendant relies solely on the situation at issue. Absent more, such as negative job performance evaluations, the current incident fails to outweigh plaintiff's evidence demonstrating her qualifications. Thus, plaintiff has satisfied this prong of her *prima facie* case.

Plaintiff has also met her minimal burden of showing that similarly situated employees were treated more favorably. "Individuals are similarly situated when they have similar jobs and display similar conduct." *Vasquez v. County of Los Angeles*, 349 F.3d 634, 641 (9th Cir. 2003) (addressing, in

a pretext analysis rather than a *prima facie* analsysis, whether plaintiff and other employees were similarly situated); *see also Bowden v. Potter*, 308 F. Supp. 2d 1108, 1117 (N.D. Cal. 2004) ("The employees need not necessarily have the same supervisor, be subject to the same standards, and engage in the same conduct. The relevance of such factors depends on the circumstances and nature of the case.").

Here, plaintiff has submitted discipline letters issued to two individuals, both white males, who plaintiff claims were similarly situated and treated more favorably than she: (1) Mr. Higginbotham and (2) Mr. Dunn.[2] Like plaintiff, Mr. Higginbotham worked as an Acting Manager of Maintenance, only at a different location than plaintiff, and faced charges of "Unacceptable Conduct" for working 696 hours of unauthorized straight time pay from August 17, 2002 to January 10, 2003. Defendant issued Mr. Higginbotham a letter of warning in lieu of a fourteen day time-off suspension. *See* Opp'n, Ex. 14.[3] Mr. Dunn, while working as the Supervisor Maintenance Operation at the International Service Center, was also charged with "Unacceptable Conduct" for using his government credit card for personal use in March 2005. Mr. Dunn also received a proposed letter of warning in lieu of a fourteen day time-off suspension. *See* Opp'n, Ex. 17. Plaintiff has not submitted any other evidence regarding Mr. Higginbotham or Mr. Dunn, and thus the Court does not have any information about their specific offenses, work histories, or the details of the discipline issues. Although this is a close call given the limited amount of evidence regarding the comparators, the Court finds plaintiff has met the minimal burden to demonstrate this fourth prong of her *prima facie* case.

---

[2] Plaintiffs also identifies five additional white male employees who she argues are similarly situated. However, the only evidence she presents to support this proposition are her own deposition statements in which she states her belief regarding the discipline that defendant levied on those five employees. Plaintiff's statements are inadmissible hearsay. *See* Fed. R. Evid. 801. Plaintiff asserts in her opposition brief that defendant frustrated discovery on this and other matters. The Court notes that plaintiff did not move to compel further discovery, and that once plaintiff secured representation in this case, the parties stipulated to extend discovery deadlines.

[3] In her declaration, plaintiff claims she later spoke with Mr. Higginbotham who informed her that he ultimately received a fourteen-day suspension. *See* McDaniel Decl., Ex. 1. This evidence is inadmissible, however, because it is hearsay. *See* Fed. R. Evid. 801. Even if plaintiff's statement was admissible, the fact that Mr. Higginbotham received more serious discipline than what was stated in the discipline letter submitted by plaintiff raises questions about the probative value, if any, of the two letters submitted by plaintiff.

6

### B. Defendant's nondiscriminatory reason

Because plaintiff has produced sufficient evidence to establish a *prima facie* case, the burden shifts to defendant to articulate a "legitimate nondiscriminatory reason" for the adverse employment action. *See Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 354-55 (1981). Here, defendant states that it demoted plaintiff because she recorded overtime hours for which she did not work, collected pay for those hours, and improperly instructed another employee to enter her time – all violations of the ELM. Plaintiff has not submitted any evidence showing that she actually worked the forty hours in question. She concedes she did not physically report for work on the days for which she collected overtime pay. Plaintiff asserts that she worked from the field, but her USPS cell phone records show, at best, that she made 159 minutes of work-related phone calls. Plaintiff's work-issued credit card shows that she made no purchases during the dates in question, disputing plaintiff's initial statement that she was making purchases on those dates. Plaintiff contends she was "on-call" during the dates in issue, but has not submitted any evidence suggesting she is paid for being "on call." Indeed, if such were the case, plaintiff would be paid at all times since she admitted she "was required to be available twenty-four hours per day, seven days each week." Opp'n at 2:28, 3:1. The Court finds that defendant articulated a legitimate reason to demote plaintiff because she violated its policies by falsely reporting her time, collecting pay for time not worked, and instructing a subordinate to enter her time.

### C. Plaintiff's showing of pretext

Because defendant has articulated a legitimate reason, the presumption of discrimination created by plaintiff's *prima facie* case no longer exists. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 510-11 (1993). Instead, in order to demonstrate discrimination in this step of *McDonnell Douglas*, plaintiff must show a discriminatory pretext for the adverse action. *See Aragon v. Repub. Silver State Disposal, Inc.*, 292 F.3d 654, 658 (9th Cir. 2002). A plaintiff may meet the burden to show pretext using either direct or circumstantial evidence. Direct evidence is evidence that "if believed, proves the fact [of discriminatory animus] without inference or presumption." *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1221 (9th Cir. 1998). Direct evidence typically consists of clearly sexist, racist, or similarly

7

discriminatory statements or actions by the employer. *See, e.g., Godwin*, 150 F.3d at 1221 (supervisor stated he "did not want to deal with [a] female"); *Cordova v. State Farm Ins. Cos.*, 124 F.3d 1145, 1149 (9th Cir. 1997) (manager called employee a "dumb Mexican" and stated he was hired only because he was a minority). Circumstantial evidence includes evidence "showing that the employer's proffered explanation for the adverse action is 'unworthy of credence.'" *Coghlan*, 413 F.3d at 1095 (quoting *Burdine*, 450 U.S. at 256). "To show pretext using circumstantial evidence, a plaintiff must put forward specific and substantial evidence challenging the credibility of the employer's motives." *Vasquez*, 349 F.3d at 642.

Plaintiff presents no evidence of any racial or sexist comments made by USPS decisionmakers or any persons working with her at the USPS. At most, she presents the declaration of her former supervisor, in which he states his opinion that "[i]t is not a coincidence that all but one of the [three] African American managers/supervisors . . . were all removed, demoted or forced out while working at the United States Postal Service Airmail facility." *See* Butler Decl. ¶ 9. Such suspicion is not direct evidence sufficient to show pretext.

Instead, relying on circumstantial evidence, plaintiff contends that defendant departed from its normal disciplinary practice in demoting her, and relatedly that defendant did not discipline Mr. Higginbotham and Mr. Dunn, two white males, as harshly as it punished her. With respect to her first argument, plaintiff asserts that defendant follows a progressive disciplinary model, beginning with a verbal warning, followed by a letter of warning, a five-day suspension, a seven calendar day suspension, a fourteen calendar day suspension, an emergency suspension and eventually a proposal to terminate. *See* McDaniel Decl. ¶ 9. However, the ELM does not mandate that defendant take the disciplinary steps described by plaintiff. *See* Alabastro Decl., Ex. 1. Specifically, in regards to violations of § 666.84, the ELM states that an employee who falsifies time records "is subject to removal or other discipline."

Plaintiff provides no testimony from any employee in charge of deciding disciplinary matters who corroborates plaintiff's claim that defendant failed to follow the ordinary disciplinary procedures here. Instead, plaintiff's only evidence of this disciplinary practice is her own self-serving declaration, the letters of warning received by Mr. Higginbotham and Mr. Dunn, and the declaration of her former supervisor, Walter Butler. These three pieces of evidence fail to make a specific and substantial

showing that defendant deviated from its disciplinary policy. In regards to plaintiff's self-serving declaration, the Court may not "find a 'genuine issue' where the only evidence presented is 'uncorroborated and self-serving' testimony." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (citing *Kennedy v. Applause, Inc.*, 90 F.3d 1477, 1481 (9th Cir. 1996) (finding a plaintiff's uncorroborated and self-serving deposition testimony did not present a sufficient disagreement to require submission to a jury) (internal citation and quotation marks omitted)). The warning letters issued to Mr. Higginbotham and Mr. Dunn are not probative of defendant's discipline policy, particularly when plaintiff sets forth no other evidence about their cases but simply presents the warning letters in a vacuum. Mr. Butler testified that "[i]n Ms. McDaniel's situation, other employees would have been given the opportunity to cure the behavior, given verbal warnings, written letters of warning, suspension and then demotion or be fired. This was the pattern of discipline under the United States Postal Service. Discipline was supposed to be corrective and not punitive in nature." *See* Butler Decl. ¶ 6. His testimony is entirely conclusory and is not enough to support plaintiff's argument that defendant followed a progressive disciplinary practice.

Plaintiff also relies on the disciplinary treatment received by Mr. Higginbotham and Mr. Dunn in comparison to the punishment she received from defendant. To support plaintiff's similarly situated argument in the pretext analysis context, plaintiff must present specific and substantial evidence demonstrating similarly situated employees were treated more favorably, as opposed to the minimal showing needed to support this argument during the *prima facie* stage of *McDonnell Douglas*. "The ultimate question that is informed by the similarly situated analysis is whether there is a basis for inferring discriminatory motive: Does the purported purpose of the challenged action require similar treatment of the two employees or does it justify different treatment due to differences in their status or situation rather than race?" *Bowden*, 308 F. Supp. 2d at 1117.

Here, the Court concludes that plaintiff has not submitted specific and substantial evidence to find that plaintiff's treatment differed from that of Mr. Higginbotham and Mr. Dunn because of plaintiff's race or gender. Plaintiff correctly observes that like herself both Mr. Higginbotham and Mr. Dunn worked in supervisory positions and violated the ELM, although they violated different sections of the ELM than plaintiff. However, plaintiff has not submitted any evidence regarding the specific

9

1 details of Mr. Higginbotham or Mr. Dunn's cases to enable the Court to make a meaningful
2 comparison. Furthermore, the limited information that is before the Court suggests that Mr.
3 Higginbotham and Mr. Dunn appear to have taken responsibility for their misconduct. The disciplinary
4 letter issued to plaintiff shows that plaintiff appeared to shy away from the truth when confronted with
5 questions of whether she worked the forty hours she reported working. *See* McDaniel Decl., Ex. 1. Her
6 story changed several times, adding support to defendant's reason for demoting her – her deceptive
7 behavior could no longer be trusted in a supervisory position. Accordingly, the Court finds that plaintiff
8 has not presented any "specific and substantive" evidence sufficient to demonstrate that there is a
9 genuine issue of material fact as to discriminatory pretext.

## II.    Retaliation

Plaintiff alleges that her second demotion, from Supervisor of Maintenance Support Operations to Maintenance Support Clerk, was in retaliation for EEO activity. Claims of retaliation under Title VII are also analyzed under the *McDonnell Douglas* burden shifting framework. *See Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000). To establish a *prima facie* case of retaliation, plaintiff must show that (1) she engaged in protected activity, (2) that defendant subjected her to an adverse employment action, and (3) a causal link exists between the protected activity and the employer's action. *Passantino v. Johnson & Johnson Consumer Prods., Inc.*, 212 F.3d 493, 506 (9th Cir. 2000).

As to the *prima facie* case, defendant does not dispute whether plaintiff engaged in protected activity or that a causal link exists, but only disputes that plaintiff has shown she suffered an adverse employment action. Plaintiff claims her second demotion on April 11, 2005 was in retaliation for her EEO activity. A demotion is the type of adverse action reasonably likely to deter an employee from bringing forth a complaint of discrimination. *See Ray*, 217 F.3d at 1244 (finding that the plaintiff suffered an adverse employment action by having his pay reduced). Thus, having demonstrated that she suffered a demotion after engaging in protected activity, plaintiff has demonstrated this element of her *prima facie* case and carried her burden in this stage of *McDonnell Douglas*.

The parties advance the same arguments and evidence with respect to the remaining steps of the *McDonnell Douglas* analysis for the retaliation claim as for the discrimination claim. For reasons stated

10

*supra*, the Court finds that plaintiff has failed to present evidence sufficient to demonstrate that there is a genuine issue of material fact as to discriminatory pretext or retaliation.

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby GRANTS defendant's motion for summary judgment.  (Docket No. 46).

**IT IS SO ORDERED.**

Dated: November 20, 2007

SUSAN ILLSTON
United States District Judge